**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**AMY R. BIEHL,**

        **Plaintiff,**

    **v.**                                        **Civil Action 2:15-cv-2879
Magistrate Judge Jolson**

**B.E.T., LIMITED, et al.,**

        **Defendants.**

## OPINION AND ORDER

This matter is before the Court on Defendants Deere & Company and ATI Products, Inc.'s Motion For Summary Judgment and to Exclude the Testimony of Plaintiff's Engineering Expert Steven Becker. (Doc. 32). For the reasons that follow, Defendants' Motion to Exclude is **DENIED** and their Motion for Summary Judgment is **GRANTED**, meaning Defendants' Motion is **DENIED IN PART** and **GRANTED IN PART**.

## I.    BACKGROUND

Because this matter is before the Court on Defendants' Summary Judgment Motion, the Court views the facts in the light most favorable to Plaintiff, the nonmoving party.

On March 17, 2013, Adam D. Biehl installed a fuel pump on a John Deere 4320 model farming tractor owned by his friend, Matt Dailey. (Docs. 4, 34 at 2). According to Mr. Dailey, a month prior to the installation of the fuel pump, the tractor's flywheel was replaced and installed. (Doc. 34-2, p. 30). After the installation of the fuel pump, Mr. Biehl tested the pump. While he was accelerating, decelerating, and idling the tractor to ensure the pump was working properly, the tractor's flywheel fractured and broke through the clutch housing. (Docs. 4 at 5, 34 at 2, 32-1 at 1). The flywheel struck Mr. Biehl, who died as a result of his injury. (*Id.*).

Plaintiff Amy R. Biehl, as Administratrix of the Estate of her late husband Adam Biehl,

filed the Complaint in this matter in the Common Pleas Court of Washington County, Ohio on March 17, 2015, against Defendants B.E.T., Limited, John Deere and Subsidiaries, and ATI Products. (Doc. 4). Plaintiff alleged that the "flywheel housing that shattered was defectively manufactured, marketed, or otherwise placed in the stream of commerce by various Defendants." (*Id.* at 5). Specifically, Plaintiff asserts: (1) defective manufacture and construction pursuant to Ohio Rev. Code § 2307.74; (2) defective design and/or formulation pursuant to Ohio Rev. Code § 2307.75; (3) defective product due to inadequate warning or instruction pursuant to Ohio Rev. Code § 2307.76; (4) defective product due to nonconformance with manufacturers' representations pursuant to Ohio Rev. Code § 2307.77; (5) a wrongful death claim; and (6) a survivorship claim. (*Id.*).

On September 9, 2015, B.E.T., Limited was dismissed from the action pending in Washington County. As a result, this action became a controversy between citizens of different states under 28 U.S.C. § 1332(a)(1). (Doc. 1-1). Defendants subsequently removed this action to this Court based upon its diversity jurisdiction, and the parties consented to the Magistrate Judge's jurisdiction. (*See* Docs. 1, 14).

Defendants filed the Motion for Summary Judgment and to Exclude the Testimony of Plaintiff's Engineering Expert on September 15, 2017. (Doc. 32). Plaintiff responded (Docs. 33, 34), and Defendants filed their Reply. (Doc. 35). The undersigned subsequently held a hearing on the summary judgment and exclusion issues on November 29, 2017. With this matter fully briefed, it is now ripe for a decision.

## II. DISCUSSION

### A. Motion to Exclude the Testimony of Plaintiff's Expert

The Court first addresses the portion of Defendants' Motion seeking to exclude the testimony of Plaintiff's expert Steven Becker. (Doc. 32-1). In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the United States Supreme Court held "that the Federal Rules of Evidence had superseded the 'general acceptance' test of *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923), and that Rule 702 requires that trial judges perform a 'gate-keeping role' when considering the admissibility of expert testimony." *L.S. v. Scarano*, No. 2:10-CV-51, 2011 WL 4948099, at *2 (S.D. Ohio Oct. 18, 2011) (citing *Daubert*, 509 U.S. at 597). Specifically, Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> > (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> > (b) the testimony is based on sufficient facts or data;
> > (c) the testimony is the product of reliable principles and methods; and
> > (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Taken together, Rule 702 and *Daubert* require judges to ensure that any scientific testimony or evidence admitted is both relevant and reliable. *See Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846–47 (N.D. Ohio 2004); *Great N. Ins. Co. v. BMW of N. Am. LLC*, 84 F. Supp. 3d 630, 636 (S.D. Ohio 2015).

In performing this gatekeeping role, "the focus must be solely on principles and methodology, not on the conclusions they generate." *In re Aredia & Zometa Prod. Liab. Litig.*, No. 3:06-0377, 2009 WL 2497536, at *1 (M.D. Tenn. Aug. 13, 2009) (citing *Best*, 563 F.3d at 177). As one court explained:

> A court must be sure not to exclude an expert's testimony on the ground that the
> court believes one version of the facts and not the other. *In re Scrap Metal
> Antitrust Litig.*, 527 F.3d 517, 529 (6th Cir. 2008). The task for the Court in
> deciding whether an expert's opinion is reliable is not to determine whether it is
> correct, but rather to determine whether it rests upon a reliable foundation, as
> opposed to unsupported speculation. *Id.* at 529–30. Rejection of expert testimony
> is the exception, rather than the rule. *Id.* at 530.

*In re Aredia & Zometa Prod. Liab. Litig.*, 2009 WL 2497536, at *1. At base, a "judge's role is simply to keep unreliable and irrelevant information from the jury because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value." *Scarano*, 2011 WL 4948099, at *2–3 (citing *Wellman v. Norfolk and W. Ry. Co.*, 98 F. Supp. 2d 919, 923–24 (S.D. Ohio 2000)).

Here, it is Plaintiff's burden to show by a preponderance of the evidence that Becker "is qualified and will testify to scientific knowledge that will assist the trier of fact in understanding and disposing of relevant issues." *Great N. Ins. Co.*, 84 F. Supp. 3d at 636 (quoting *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 478 (6th Cir. 2008)). In other words, Plaintiff "does not have the burden of proving that it is scientifically correct, but that by a preponderance of the evidence, it is reliable." *Scarano*, 2011 WL 4948099, at *2 (citations omitted). Plaintiff describes, and Defendants do not challenge, Becker's extensive experience and qualifications with power take-off units, drive trains, flywheel operation, and other combustion engine processes. (*See* Doc. 33 at 4–5). It is thus uncontroverted that Becker is qualified to opine on the subject matter in this case.

Defendants instead challenge the reliability of Becker's opinions, claiming his conclusions "are speculative and not based on facts." (Doc. 32-1 at 1). Throughout their Motion, Defendants identify numerous examples of Becker relying on what Defendants label "mere speculation." For example, Becker concluded that a vibration problem due to critical

speed was not the cause of Mr. Biehl's accident because two witnesses did not report an odd noise or describe the tractor shaking prior to the "failure." (*See* Doc. 34-7 at 9). At the same time, though, Becker conceded that any vibration may have been "masked by the diesel engine." (*Id.*). Defendants argue that this concession illustrates "Becker merely speculates as to the lack of vibration." (Doc. 32-1 at 10). In another example, Defendants allege that because Becker did not rule out installation issues with the flywheel, his ultimate conclusion—that even if the tractor was running over-speed, it should not have caused the flywheel to fail if there was no design or manufacturing defect—was based on speculation and nothing more. (*Id.*).

Relevant here, the purpose of *Daubert* has been interpreted as an "attempt[] to strike a balance between a liberal admissibility standard for relevant evidence on the one hand and the need to exclude misleading 'junk science' on the other." *Best v. Lowe's Home Ctr., Inc.*, 563 F.3d 171, 176–77 (6th Cir. 2009). Neither *Daubert* nor Rule 702 requires absolute certainty. *See Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671 (6th Cir. 2010) (citing *Daubert*, 509 U.S. at 590). And courts have held that "where one person sees speculation . . . another may see knowledge, which is why the district court enjoys broad discretion over where to draw the line." *Id.* (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997)). Thus, when the reliability of evidence is in dispute, it is often "more appropriate for a judge to admit the evidence than to keep it from the fact-finder because '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *Great N. Ins. Co.*, 84 F. Supp. 3d at 637 (quoting *Daubert*, 509 U.S. at 596).

With this liberal admissibility standard in mind, the Court finds in its discretion that the evidence should be permitted. Relying on witness testimony or using process of elimination

methods to reach a conclusion does not appear to be the type of "misleading junk science" *Daubert* seeks to curb. Instead, Becker is a qualified expert who offered opinions based upon the evidence he reviewed. While Becker certainly expressed uncertainly as to what caused the accident, this ambiguity does not warrant the exclusion of his opinion; rather, his uncertainty goes to the weight of his testimony. *Id.* at 642 ("[T]his Circuit has held consistently that an expert's failure to perform his own independent tests or studies of his alternative design or theories goes to the weight of his testimony, not to its admissibility[.]").

Consequently, the portion of Defendants' Motion seeking to exclude Becker is **DENIED**.

### B. Motion for Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial "responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record that demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *see id.* at 255 ("The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor.") (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (explaining that "genuine" amounts to more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "whether the evidence

presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

As an initial matter, this is a diversity case "so the Court applies the choice of law rules of the forum state." *Miles v. Raymond Corp.*, 612 F. Supp. 2d 913, 917 (N.D. Ohio 2009) (citing *Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003)). "In a personal injury action, Ohio applies the balancing test set forth in the Restatement (Second) Conflict of Laws § 146, which presumes that the location of the injury controls the applicable law unless another state has a more significant relationship to the occurrence and the parties." *Id.* (citing *Muncie Power Prods., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873–74 (6th Cir. 2003) (citations omitted)). Because the injury giving rise to Plaintiff's claims occurred in Ohio, Ohio law applies to her state law claims. *Id.*

Under Ohio law, Ohio Revised Code sections 2307.71 through 2307.80, known as the Ohio Products Liability Act ("OPLA"), govern product liability claims. *Indiana Ins. Co.*, 326 F. Supp. 2d at 855 (citations omitted). As this Court has explained:

> The OPLA provides generally that a manufacturer is subject to liability if a plaintiff establishes, by a preponderance of evidence, that the manufacturer's product in question "was defective in manufacture or construction as described in section 2307.74 of the Revised Code, was defective in design or formulation as described in section 2307.75 of the Revised Code, was defective due to inadequate warning or instruction as described in section 2307.76 of the Revised Code, or was defective because it did not conform to a representation made by its manufacturer as described in section 2307.77 of the Revised Code."

*Jones v. Staubli Motor Sports Div. of Staubli Am. Corp.*, 897 F. Supp. 2d 599, 607 (S.D. Ohio 2012) (citing Ohio Rev. Code § 2307.73(A)). Here, Plaintiff alleges defect pursuant to §§ 2307.74 through 2307.77. (*See* Doc. 4).

*1. Manufacturing Defect (§ 2307.74)*

Pursuant to Ohio Rev. Code § 2307.74, "[a] product is defective in manufacture or construction if, when it left the control of its manufacturer, it deviated in a material way from the design specifications, formula, or performance standards of the manufacturer, or from otherwise identical units manufactured to the same design specifications, formula, or performance standards."  Defendants allege there is no direct evidence demonstrating that the flywheel at issue deviated from any manufacturing specifications.  (Doc. 32-1 at 8).  Indeed, Defendants assert that the metallurgical testing demonstrates the exact opposite—that the subject flywheel's metal and backing plate were normal.  (*Id.*).

To counter the metallurgical testing, Plaintiff has changed course in this litigation. Despite previous representations to the Court, Plaintiff now argues that "Defendants' reliance on the methodology of the metallurgical testing being normal is a disputed fact," because not enough sections of the flywheel were tested.  (Doc. 34 at 9).  In a November 30, 2016 Motion to modify case deadlines, however, the parties represented they had jointly "agreed to a three-part protocol for Defendants' metallurgical testing."  (*See* Doc. 23 at 3; *see also* MSJ Hearing Audio). In fact, the parties explained in that same Motion that because "[t]he testing revealed that there were no abnormalities in the flywheel material[,] [b]oth parties need[ed] time to reassess the facts and circumstances of the case in order to determine what happened."  (*Id.*).  Accordingly, Plaintiff's dispute regarding the metallurgical testing is disingenuous, and the Court reads the metallurgical testing report as yielding undisputedly normal results.

Despite the normal metallurgical testing, Plaintiff still has a potential way forward. Without any direct evidence available, a plaintiff may show that a defect in a product "existed at the time the product left the manufacturer" by using "circumstantial evidence where a

preponderance of that evidence establishes that the loss was caused by a defect and not other possibilities, although not all other possibilities need be eliminated." *Yanovich v. Zimmer Austin, Inc.*, 255 F. App'x 957, 966 (6th Cir. 2007) (citing *State Farm Fire & Cas. Co. v. Chrysler Corp.*, 37 Ohio St. 3d 1, 523 N.E.2d 489, 493–94 (1988)). There is, however, an important hurdle a plaintiff must clear before relying on circumstantial evidence.

> [B]efore a plaintiff "can rely on circumstantial evidence or the process of elimination . . . the plaintiff must at least present evidence to show why the defendant's product should not be among the possible causes to be eliminated." *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 856 (N.D. Ohio 2004) (quoting *Truck Ins. Exch. v. MagneTek, Inc.*, 360 F.3d 1206, 1215 (10th Cir. 2004) (internal quotation marks omitted)). That is, in order to rely on circumstantial evidence to prove the existence of a defect, [a plaintiff] must introduce other evidence that either (1) *eliminates* some of the other possible causes of the injury or (2) establishes that a defect-free product would not have performed the way the product at issue performed.

*Yanovich*, 255 F. App'x at 966 (emphasis in original).

Here, Plaintiff's expert failed to eliminate or consider critical, potential causes—namely, potential installation errors and problems with the tractor itself (which was first purchased in 1972). (*See* Doc. 34-7; *see also* MSJ Hearing Audio (Plaintiff's counsel argued that he cannot say there was not a problem with the tractor, nor could they rule out a mechanical or installation problem)). And although Plaintiff represents that Becker ruled out speed as a cause of the accident, his report is less conclusive. (Doc. 34-7 at 8 (opining that critical speed would "cause the driveline to vibrate excessively and display to the operator as a noise and noticeable vehicle shake prior to failure," and although witnesses did not report this, it "may have been masked by the diesel engine")). Thus, even when construing Becker's report in Plaintiff's favor, the evidence "does not permit reasonable minds to conclude" that the cause of the injury was a manufacturing defect in the flywheel when the product "left the hands of the manufacturer," because likely potential causes were not ruled out. *State Farm Fire & Cas. Co. v. Chrysler*

*Corp.*, 37 Ohio St. 3d 1, 523 N.E.2d 489 (1988); *see also Nationwide Agribusiness Ins. Co. v. CNH Am. LLC*, No. 1:12-CV-01430, 2014 WL 2520502, at *6 (N.D. Ohio June 4, 2014) (holding that Plaintiff "failed to provide sufficient circumstantial evidence to demonstrate that the fire that destroyed the Tractor was caused by a defect and not other possibilities") (quotations and citations omitted). Consequently, Plaintiff has not eliminated enough potential causes "to support a non-speculative jury finding that the challenged design defect caused the injuries." *See Hickey v. Otis Elevator Co.*, 2005-Ohio-4279, ¶¶ 12, 14, 163 Ohio App. 3d 765, 770, 840 N.E.2d 637, 640 (holding that a jury should "not be permitted to speculate when defendant's conduct is merely one of several possible causes of plaintiff's injuries") (citations and quotations omitted); *see also id.* at ¶ 17 (noting that the "realm for jury speculation" is wide when the product at issue is a "complicated mechanical device").

Because Plaintiff cannot eliminate other possible causes of the injury, she must establish that defect-free flywheels would not have performed the way the flywheel in this case performed in order to use circumstantial evidence. *See Yanovich*, 255 F. App'x at 966 (noting the two paths a plaintiff may travel in order to rely on circumstantial evidence). Defendants argue that (1) the metallurgy of the flywheel was normal, and therefore the flywheel itself was not defective; and (2) the flywheel broke due to a combination of the fact that the pump's high-idle speed was set 24% above the maximum specification and the cut-off speed of the governor was 35% above the maximum specification, meaning the tractor was capable of operating at 3480 RPMs, despite a maximum specification of 2700 RPMs. (*See* Doc. 32–1 at 6–11; *see also* MSJ Hearing Audio).

Plaintiff provides no evidence that non-defective flywheels would have performed differently had the other circumstances remained the same—namely, the pump's high idle speed settings, the fact that the governor was set well-above maximum specification, and that the

tractor was forty-years old. *See Yanovich*, 255 F. App'x at 966 (holding that Plaintiff failed to eliminate other potential causes because she did "not provide any evidence to support her contention that non-defective patellas would not have broken had the other circumstances of her surgery and her biometrics remained the same.").

As the Sixth Circuit in *Yanovich* explained, a situation such as this is distinguishable to those in which Ohio courts have found circumstantial evidence supported the existence of a defect. In those cases, "there was some affirmative evidence that a non-defective product would not have failed in the matter of the product at issue." *Id.* (citing *Colboch v. Uniroyal Tire Co.*, 108 Ohio App. 3d 448, 670 N.E.2d 1366 (1996) (circumstantial evidence supported a tire defect when the tire exploded at an inflation of 35 p.s.i., when according to the defendant's own expert witness, a normal tire, conforming to the company's manufacturing standards, would have been able to withstand inflation up to 40 p.s.i.)); *Pearce v. Fouad*, 146 Ohio App. 3d 496, 766 N.E.2d 1057 (2001) (circumstantial evidence supported a defect in an oscillating fan that caused a fire because UL safety guidelines for electric fans require such fans to be protected against overheating either by the installation of a thermal cutoff switch or an impedance protected motor design).

Here, no evidence exists that the flywheel did not conform to the manufacturer's specifications. Indeed, the flywheel, which metallurgical testing revealed was normal, was operating when both the fuel pump's high-idle speed and cut-off speed of the governor was set well-above the maximum specification. This, combined with the fact that Plaintiff was unable to eliminate several possible causes of the accident, demonstrates that Plaintiff has failed to present circumstantial evidence sufficient to raise a genuine issue of material fact as to a manufacturing defect.

*2.Design Defect (§ 2307.75)*

Under the OPLA, "a product is defective in design or formulation if, at the time it left the control of its manufacturer, the foreseeable risks associated with its design . . . exceeded the benefits associated with that design or formulation." Ohio Rev. Code § 2307.75(A). In weighing the risks and benefits, the statute outlines the following considerations:

(B) The foreseeable risks associated with the design or formulation of a product shall be determined by considering factors including, but not limited to, the following:

> (1) The nature and magnitude of the risks of harm associated with that design or formulation in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product;

> (2) The likely awareness of product users, whether based on warnings, general knowledge, or otherwise, of those risks of harm;

> (3) The likelihood that that design or formulation would cause harm in light of the intended and reasonably foreseeable uses, modifications, or alterations of the product;

> (4) The extent to which that design or formulation conformed to any applicable public or private product standard that was in effect when the product left the control of its manufacturer;

> (5) The extent to which that design or formulation is more dangerous than a reasonably prudent consumer would expect when used in an intended or reasonably foreseeable manner.

(C) The benefits associated with the design or formulation of a product shall be determined by considering factors including, but not limited to, the following:

> (1) The intended or actual utility of the product, including any performance or safety advantages associated with that design or formulation;

> (2) The technical and economic feasibility, when the product left the control of its manufacturer, of using an alternative design or formulation;

> (3) The nature and magnitude of any foreseeable risks associated with an alternative design or formulation.

Ohio Rev. Code § 2307.75. Further, a product is not considered defective in design or formulation under the statute if "a practical and technically feasible alternative design or formulation was not available that would have prevented the harm for which the claimant seeks to recover compensatory damages without substantially impairing the usefulness or intended purpose of the product." Ohio Rev. Code § 2307.75(F).

As Defendants note, Ohio law thus "requires expert testimony to establish both the defect and the practical and technically feasible alternative design." *Buck v. Ford Motor Co.*, No. 3:08CV998, 2012 WL 12887708, at *3 (N.D. Ohio June 25, 2012), (citing *Nationwide Mut. Ins. Co. v. ICON Health & Fitness, Inc.*, No. 04AP-855, 2005 WL 1252543, *4 (Ohio App.)). Defendants argue Plaintiff's expert failed to establish either requirement.

The Court understands Plaintiff's design argument as twofold. First, Plaintiff argues the flywheel was defective because it was made of cast iron (as opposed to steel). Plaintiff's expert is less than conclusive, however, and opines only that "[i]f the steel flywheel was an improvement over the cast iron, then the cast iron should have been eliminated. (Doc. 34-7 at 10). Second, Plaintiff argues that the "safety factor" of the flywheel should have been 1.5 or higher. In particular, Plaintiff's expert, Becker, asserts that "[w]ith a 1.5 factor of safety for geometry and material, the John Deere driveline should have been able to withstand greater speeds than design." (Doc. 34-7 at 9). More specifically, he states that "the design should have materially and geometrically withstood 3975 rpm or more for limited duration without material failures," so the fact that it "fail[ed] catastrophically due to such a small speed difference" demonstrates the flywheel was designed improperly. (*Id.*). It is not clear, however, why a safety factor below 1.5 is per se unreasonable or why that should be considered the minimum engineering standard. Indeed, Plaintiff presents no evidence to this Court to suggest a safety

factor of 1.5 is—or should be—a required industry standard. Consequently, the basis of Plaintiff's alleged design defect is somewhat unclear.

The record is clear, however, regarding certain inquiries Plaintiff failed to undertake. It is clear that Becker failed to inquire about the foreseeable risks associated with the flywheel's design or formulation in comparison to the benefits, as required by Ohio Rev. Code. § 2307.75. *See Yanovich*, 255 F. App'x at 969. Further, Becker made no finding as to a practical and technically feasible alternative design or formulation. *See Huffman v. Electrolux Home Prod., Inc.*, 129 F. Supp. 3d 529, 541 (N.D. Ohio 2015) (noting that "[e]xpert witnesses for the plaintiff must establish, in all but the most 'simple' of cases, that there was a practical and technically feasible alternative design") (quotations and citations omitted). Instead, Becker concluded that "[i]f the steel flywheel was an improvement over the cast iron, then the cast iron should have been eliminated." (Doc. 34-7 at 10). This is insufficient to show a technically feasible alternative, as there was no cost-benefit analysis. *See Huffman*, 129 F. Supp. 3d at 541 (holding that because Plaintiff's expert "did not draw up schematics for his proposed alternative design," was unable to "say how, or the extent to which, the modifications would compromise the principal [] benefits" of the product in question, and took "no steps to determine whether [] modifications are feasible," the expert opinion was inadmissible to prove an alternative design).

Plaintiff attempts to remedy the lack of discussion regarding an alternative design by arguing that a steel flywheel must be a feasible alternative based on defense expert Roland Cahall's testimony. Cahall stated that "[w]ith the high RPM level on a pulling tractor, a steel flywheel must be used so the flywheel does not explode." (Doc. 34-6 at 4). Plaintiff ignores the fact, however, that the tractor at issue here was a farming tractor, not a pulling tractor, and it is undisputed that tractor pulling is markedly different from the agricultural use of a farming

tractor.  (*See* Doc. 35 at 8).  Consequently, Plaintiff failed to present evidence that a practical and technically feasible alternative design was available that would not have substantially impaired the usefulness of a *farming* tractor.  *See Thompson v. Sunbeam Prod., Inc.*, No. 2:10-CV-98, 2011 WL 4502049, at *8 (S.D. Ohio Sept. 28, 2011), *aff'd*, 503 F. App'x 366 (6th Cir. 2012) (granting summary judgment on a defective design claim because "[t]here was no evidence that a practical and technically feasible alternative design was available that would have prevented the injury [] without substantially impairing the usefulness or intended purpose of the product").

It is thus clear that Becker failed to make the necessary inquiries regarding technically feasible alternatives under the statute, and without such inquiries, he has no legal basis for concluding that Defendants' design choice was defective.  *See Yankovich*, 255 F. App'x at 969 ("Without having made such inquiries, [the expert] had no legal basis for his conclusion that [Defendant]'s design choice" was defective).  "Even under the generous standard of review for a grant of summary judgment, we do not 'accept as true legal conclusions or unwarranted factual inferences.'"  *Id.* (citing *City of Monroe Emp. Ret. Sys. v. Bridgestone Corp.*, 387 F.3d 468, 482 (6th Cir. 2004), quoting *In re Sofamor Danek Grp., Inc.*, 123 F.3d 394, 400 (6th Cir. 1997)).  Accordingly, Plaintiff has failed to introduce evidence sufficient to survive summary judgment on her design defect claim.  *See Jacobs v. E.I. du Pont de Nemours & Co.*, 67 F.3d 1219, 1242 (6th Cir. 1995) (upholding summary judgment because appellant failed to offer evidence that a feasible alternative design existed "that would have avoided the injuries in this case, or that such an alternative would not have undermined the efficacy of these materials").

### 3. Failure to Warn (§ 2307.76)

To prove a failure-to-warn claim, a plaintiff must establish that "(1) defendants knew or should have known of the risks associated with the product; (2) defendants failed to warn

plaintiff about those risks; and (3) the failure to warn was the proximate cause of plaintiff's injuries." *Strong v. U-Haul Co. of Mass.*, No. 10-CV-00383, 2007 WL 433268, at *3 (S.D. Ohio Feb. 2, 2007); *see also Miller v. ALZA*, 759 F. Supp. 2d 929, 936 (S.D. Ohio 2010) ("A plaintiff 'not only must convince the fact finder that the warning provided is unreasonable, hence inadequate, but he also must establish the existence of proximate cause between the [product] and the fact of the plaintiff's injury.'") (citing *Hisrich v. Volvo Cars of N. Am., Inc.*, 226 F.3d 445, 450–51 (6th Cir. 2000)). Plaintiff argues Defendants had a duty to warn of known dangers associated with the flywheel, and Adam Biehl's death demonstrates a breach of this duty. (Doc. 34 at 16).

To succeed on a failure to warn claim, Plaintiff must establish that "'[t]he manufacturer knew or, in the exercise of reasonable care, should have known' of the risk about which it failed to warn." *Am. Winds Flight Acad. v. Garmin Int'l*, No. 5:07CV3401, 2010 WL 3783136, at *5 (N.D. Ohio Sept. 17, 2010) (quoting Ohio Rev. Code § 2307.76(A)) (citing *Crislip v. TCH Liquidating Co.*, 52 Ohio St.3d 251, 257, 556 N.E.2d 1177 (1990)). Plaintiff argues that Defendants were aware "cast iron flywheels can 'explode' when run over-speed," which is evidenced by defense expert Cahall's report. (Doc. 34 at 16). Cahall testified that "during his [tractor] pulling years I have seen [cast iron] flywheels explode due to high RPM levels." (Doc. 34-6 at 4). This, Plaintiff argues, establishes that Defendants were aware of the risk and a warning should have been created or distributed regarding the potential "explosion" of cast iron flywheels. (Doc. 34 at 15–16).

Plaintiff's logic, however, is flawed. As previously mentioned, this case involves a farming tractor, not a pulling tractor, and the record is replete with examples of how the two types of tractors differ. (*See, e.g.*, Doc. 32-6 at 5, David Biehl Dep. (testifying that the difference

between a farming tractor and a pulling tractor "is the difference between a car that you drive up and down the highway . . . and [] a NASCAR or a dragstrip car"). Despite these differences, Plaintiff has failed to provide any factual allegations that Defendants knew, or should have known, a cast iron flywheel in a *farming* tractor was at risk of exploding. In fact, counsel for Defendants represented to Plaintiff and to this Court that the flywheel at issue had been used in John Deere 4320 tractors for forty years with no history of similar accidents. (Doc. 35 at 12). Plaintiff has failed to rebut this assertion or otherwise provide any evidence that Defendants knew, or should have known about a risk involving flywheels. *See Linert v. Foutz*, 2016-Ohio-8445, ¶ 38, 149 Ohio St.3d 469, 479, 75 N.E.3d 1218, 1228, *rec'd denied*, 2017-Ohio-573, ¶ 38, 148 Ohio St.3d 1413, 69 N.E.3d 752 (holding that the trial court properly refused to allow jury consideration on failure to warn claim because even though Plaintiffs arguably established an inherent risk in the product at issue, "they did not provide sufficient evidence from which the jury could consider the *likelihood* of the risk").

Likewise, Plaintiff has not alleged, nor did her expert offer an opinion on, what type of warnings a manufacturer exercising reasonable care should have provided. (Doc. 32-9 at 4). Consequently, Plaintiff's assertion that the flywheel was defective due to an inadequate warning "is simply an unsupported legal conclusion." *Grange Mut. Cas. Co. v. Optimus Enter., Inc.*, No. 1:15CV2394, 2016 WL 3078956, at *3 (N.D. Ohio June 1, 2016); *see also Brown v. Teledyne Cont'l Motors, Inc.*, No. 1:06-CV-00026, 2006 WL 3256531, at *3 (N.D. Ohio Nov. 9, 2006) (holding that because Plaintiff "has not produced any evidence establishing the elements of that claim-that [Defendant] knew or should have known about a risk related to the engine component and failed to warn Brown about that risk[,]" Plaintiff's claim fails).

In sum, Plaintiff has failed to create a genuine issue of material fact as to the failure to warn claim.

### 4. Failure to Conform to Representation (§ 2307.77)

"A product is defective if it did not conform, when it left the control of its manufacturer, to a representation made by that manufacturer." Ohio Rev. Code § 2307.77. Defendants argue that no representation was made, nor has Plaintiff identified one, in which the flywheel did not conform. (Doc. 32-1 at 19). Plaintiff, on the other hand, argues that "by marketing this flywheel as a replacement part, Defendants represented to consumers that the part was safe, reliable, and fit for use in John Deere tractors. Obviously, as evidenced by the death of Adam Biehl, this representation was not met." (Doc. 34 at 17). In other words, John Deere's silence is Plaintiff's basis for liability for failure to conform to a representation. However, Plaintiff was unable to provide any case law to support the proposition that Defendants' silence could be construed as a representation. (*Id.*).

Contrary to Plaintiff's assertion, a plaintiff seeking to recover for injuries incurred through the use of a product that does not conform to a manufacturer's representation must prove, *inter alia*, "that the manufacturer made a representation as to a material fact concerning the character or quality of the manufacturer's product." *Gawloski v. Miller Brewing Co.*, 96 Ohio App. 3d 160, 165, 644 N.E.2d 731, 734 (1994). Without an alleged express representation made by Defendants, the claim fails. *See Paugh v. R.J. Reynolds Tobacco Co.*, 834 F. Supp. 228, 232 (N.D. Ohio 1993) (holding that because Plaintiff did "not allege any specific express representation made by" Defendants, nor "identifie[d] the nature, extent, and language of these representations, nor allege[d] that [he] relied upon any such warranties," his claim regarding breach of warranty failed); *Grange Mut. Cas. Co*, 2016 WL 3078956, at *5 (holding that because

"Plaintiff does not identify any representations made by the manufacturer [and] does not identify the manner in which the product fails to conform to the representations," *inter alia*, Plaintiff failed to state a plausible claim for relief). Accordingly, Plaintiff has failed to create a genuine issue of material fact as to her failure to conform to a representation claim.

### 5. Wrongful Death and Survivorship

Plaintiff asserts that because Defendants' Motion does not reference the wrongful death and survivorship claims, "Defendants have put forth no evidence upon which to base a ruling for summary judgment on those claims." (Doc. 34 at 7). Despite Plaintiff's contention, both claims were addressed in Defendants' Motion for Summary Judgment. (*See* Doc. 32-1 at 20 (discussing Plaintiff's survivorship and wrongful death claims)). Thus, to the extent Plaintiff moved for summary judgment on those counts in its Opposition brief based on the fact that they were undisputed, that Motion is **DENIED**. (Doc. 34 at 17 (asking the Court to grant summary judgment for the "Plaintiff on her negligence claims in Counts I and II of her Complaint because there is no genuine issue of material fact")).

Turning to the merits, "[a] claim for survivorship differs from a wrongful death claim in that a survivorship claim is one for the 'wrong to the injured person and is confined to his personal loss and suffering before he died, while the other is for the wrong to the beneficiaries and is confined to their pecuniary loss through his death.'" *Stratford v. SmithKline Beecham Corp.*, No. 2:07-CV-639, 2008 WL 2491965, at *9 (S.D. Ohio June 17, 2008) (quoting *Johnson v. Health Care & Ret. Corp.*, No. L–92–281, 1993 WL 102492 (Ohio Ct. App. Apr. 9, 1993). Thus, "although wrongful death and survivorship claims 'share many of the same issues' and are 'asserted against the same defendant,'" they are distinct claims. *In re Heparin Prod. Liab. Litig.*,

No. 09HC60186, 2011 WL 3875361, at *4 (N.D. Ohio Sept. 1, 2011) (quoting *Peters v.*
*Columbus Steel Castings Co.*, 115 Ohio St. 3d 134, 137–38, 873 N.E.2d 1258 (Ohio 2007)).

As to Plaintiff's survivorship claim, damages "are awarded to compensate for the
decedent's pain and suffering and expenses while he was alive." *Stratford*, 2008 WL 2491965,
at *9 (citing *Perry v. Eagle–Picher Indus., Inc.*, 52 Ohio St.3d 168, 566 N.E.2d 484 (1990)).
Defendants rely on the testimony of decedent's father, who claimed "Adam was killed instantly,"
to show survivorship benefits are not appropriate here. (Doc. 32-1 at 5, citing Doc. 32-6). While
there may be some merit to this argument, it is unnecessary to reach that issue because a
survivorship claim is derivative of the principal claims in a complaint. *Id.* (citing *Glassner v.*
*R.J. Reynolds Tobacco Co.*, No. 5:99 CV 0796, 1999 WL 33591006 (N.D. Ohio June 29, 1999).
This means that Plaintiff's claim for survivorship is for damages resulting from Defendants'
actions as alleged in Plaintiff's other counts. Put another way, the claim for survivorship
remains only so long as any of the underlying principal claims in the Complaint remain. *Id.*
Thus, because the Court is granting Defendants' summary judgment motion as to all of the
Plaintiff's OPLA claims, the Court need not address the timing of decedent's death because the
survivorship claim accordingly fails as a derivative claim.

As for Plaintiff's wrongful death claim, Ohio's wrongful death statute provides in
pertinent part:

> When the death of a person is caused by wrongful act, neglect, or default which
> would have entitled the party injured to maintain an action and recover damages if
> death had not ensued, the person who would have been liable if death had not
> ensued ... shall be liable to an action for damages, notwithstanding the death of
> the person injured ....

*Wingrove v. Forshey*, 230 F. Supp. 2d 808, 825 (S.D. Ohio 2002) (quoting Ohio Rev. Code
§ 2125.01). "Because a wrongful death claim requires proof of some wrongful act, neglect or

default, a wrongful death claim must be predicated upon a separate tort." *Beyoglides v. Montgomery Cty. Sheriff*, No. 3:14-CV-158, 2016 WL 8669789, at *1 (S.D. Ohio Aug. 12, 2016) (citing *Smith v. United States*, No. 3:95CV445, 2012 WL 1453570, at *45 (S.D. Ohio Apr. 26, 2012)) (internal citations and quotations omitted). For the reasons already stated, a wrongful act, neglect, or default has not been shown by Plaintiff, nor could it have been shown by decedent. Thus, Plaintiff's wrongful death claim fails.

## III. CONCLUSION

For the reasons stated, the portion of Defendants' Motion seeking to exclude the Testimony Plaintiff's Engineering Expert Steven Becker is **DENIED,** and the portion of the Motion seeking summary judgment is **GRANTED**. (Doc. 32). Thus, Defendants' Motion is **DENIED IN PART** and **GRANTED IN PART**. The Clerk is **DIRECTED** to enter judgment in favor of Defendants and against Plaintiff. This case is **TERMINATED**.

IT IS SO ORDERED.


Date: February 2, 2018                    /s/ Kimberly A. Jolson
                                          KIMBERLY A. JOLSON
                                          UNITED STATES MAGISTRATE JUDGE